UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF COLUMBIA

**FILED**

FEB 11 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| EDGAR D. LEE,<br>716 Elderberry Lane<br>Columbia, South Carolina 29229<br>(803) 634-3660<br><br>      Plaintiff,<br><br>            v.<br><br>GARY LOCKE,<br>Secretary, U.S. Department of Commerce,<br>1401 Constitution Avenue, N.W.<br>Washington, D.C.  20230<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DOCKET NUMBER:

Case: 1:11-cv-00358
Assigned To : Huvelle, Ellen S.
Assign. Date : 2/11/2011
Description: Employ. Discrim.

JURY ACTION

## COMPLAINT

### (Disability Discrimination, Retaliation, Constructive Discharge and

### Hostile Work Environment in Federal Employment)

### Introduction

1.)     Plaintiff, Edgar D. Lee, proceeding Pro Se, brings this action pursuant to Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., and 42 U.S.C. §

1981a, the Civil Service Reform Act, 5 U.S.C. § 7703(b)(2),  and the Rehabilitation Act, 29

USC § 701  and the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq. (the

1

"ADA") to remedy acts of employment discrimination perpetrated against him by the

United States Department of Commerce.("DOC").

2.)    The plaintiff contends that DOC supervisors discriminated against him by

creating a hostile work environment, which among other acts included: failure to

reasonably accommodate him, retaliation, punishing him for using medical leave to

obtain treatment for work induced maladies, denying mandated training, medical

surveillance and personal protective equipment which caused him incapacity.  His

supervisors failed to afford the plaintiff reasonable accommodation, and caused non

selection into the Supply Management Representative position and forced him to be

constructively discharged.  The plaintiff further asserts, that the agency exposed him to

chemical and environmental hazards, hid environmental hazard data, and further

created an intolerable working environment, that caused him to suffer major

depression, experience feelings of helplessness, hopelessness, panic attacks and further

aggravated his bronchiectisis, and post traumatic stress disorder.  Moreover, by

exposing him to chemicals and hiding job hazard information to avoid training him and

furthering his career, the plaintiff asserts that the supervisors caused him to lose the

ability to provide for his family by constructively discharging him.

## Jurisdiction

3.     This Court has jurisdiction over the subject matter of this civil action pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Rehabilitation Act,

29 U.S.C. § 701 et seq.

## Venue

4.     Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and

5 U.S.C. § 7703(b)(2); as Plaintiff was employed by the United States Department of

Commerce (DOC) in the District of Columbia at the time of  the action taken.  Plaintiff's

employment records are maintained by the DOC, in this judicial district, and decisions

adverse to Plaintiff's employment that are the subject of this civil action were made and

taken in this judicial district.

## Parties

5.     Plaintiff, Edgar D. Lee, an African-American male who is 42-years old, is a

citizen of the United States and a resident of the State of South Carolina. At all times

relevant to this suit, until his constructive discharge in January of 2009, Plaintiff resided

in Washington, D.C. and Maryland.  "DOC" employed him in the Office of the

Secretary, Office of Administrative Services/ Real Estate Policy and Major Programs/

Energy, Safety and Environmental Division.

6.     Defendant Gary Locke is currently the Secretary of Commerce of the United

States.  Mr. Locke is sued here in his official capacity only.

**Statement of Facts**

7.      Plaintiff, Edgar D. Lee was a 60% disabled American veteran and suffers from bronchiectisis, total ileostomy, post traumatic stress disorder and seizure disorder. The plaintiff was constructively discharged as Hazardous Material/Waste Facility Assistant on January 7, 2009.

8.      During the time at issue in this case, the plaintiff, employed by the U.S. Department of Commerce ("DOC") in the Office of Administrative Services ("OAS") received performance appraisals at the "Outstanding" level for approximately 8 years and was reassigned as a Hazardous Waste Facility Assistant after engaging in a protected activity.

9.      The plaintiff's first level supervisor was Jana Brooks, a female, who was the Chief, Energy, Safety and Environmental; his second level supervisor was Braulio Ramon, Associate Director of Office of Real Estate, Policy and Major Programs. His third line supervisor was Fred Fanning, Director, Office of Administrative Services.

10.     The duties of the Hazardous Waste Facilities Assistant placed the plaintiff into a hazardous environment and included daily inspections of the Herbert C. Hoover Building ("HCHB"), a building that boasts 1.9 million square feet of space.

11.     Day to day activity of the Hazardous Waste Facility involves inspections of hazardous waste containers, emergency chemical spill cleanup, disposal of various hazardous chemicals and wastes that include asbestos, lead based paint, mercury,

butyl cellosolve, sodium metasilicate and other chemicals that the Agency routinely used. Other duties included inspections for safety and health concerns, recycling, labeling, consolidating and containerizing used chemicals, moving full 55-gallon drums to make available for pickup and disposal, and generating waste manifests to ensure proper transportation and disposal.

12.    The duties of the position are subject to laws governed by the Environmental Protection Agency (EPA) and Occupational Safety and Health Administration (OSHA) and require initial and annual training, licensing, medical surveillance monitoring, respiratory protection and personal protective equipment in order to minimize exposure and to protect employees from injury and illness. These training and medical services were withheld from the plaintiff.

13.    The plaintiff worked in the position for at least a year without any training or medical surveillance at all. Then in 2005, the plaintiff attended a 40 hour Hazwoper Course, a small portion of the required training by law for the position, however, the agency withheld the balance of the training and the necessary physicals and medical monitoring required by law from the plaintiff.

14.    All of the plaintiff's supervisors were aware of his disability and aware of the laws regarding reasonable accommodation and reassignment, Fanning and Brooks came from Occupational Safety and Health that fell under Human Resources.

15.    Fred Fanning was previously Director of Occupational Safety and Health for

DOC and is a Certified Industrial Hygienist, a Certified Safety Professional, was aware

of the environmental hazards in the HCHB, and was the plaintiff's mentor but did

nothing to protect the plaintiff's health.

16.    The agency with knowledge kept the plaintiff in a position that was

environmentally hostile and dangerous for which he could not medically qualify.

According to 29CFR 1910.120, 29 CFR 1926.62, 29 CFR 1910.1001, 29 CFR 1910.134 a

worker has the right to know what hazards they are exposed to, receive training to

protect themselves, have job hazard information at their disposal at all times and be

notified of any changes.  In addition, supervisors are required to maintain a safety and

healthy workplace for employees and provide employees with testing data so that

employees are aware of the types and severity of hazards in the workplace.  The agency

withheld all such data, training and medical surveillance.

17.    The plaintiff's first line supervisor, encouraged him to seek out other positions

but then sabotaged his attempts with the prospective new supervisor by telling her

(Laura Ryan, Associate Director of Management Support Services) that the plaintiff was

faking his illness and he should be driven out of the organization like it is done in the

military.

18.     After returning to work from knee surgery in April of 2008, plaintiff received a
letter from Mario Aquino, (Building Manager).  This letter was written by Fred
Fanning about an environmental issue from 2007 and stated that the Plaintiff "may
have been" exposed to asbestos during the course of his work in the building and that
access to the 8th floor of the building was off limits to those who did not have asbestos
training.  The plaintiff had frequented the attic for years as well as other areas in the
building that contained asbestos, lead, mercury and other hazards but was given a
letter concerning asbestos exposure only.  The plaintiff requested permission of Mario
Aquino to attend an asbestos course but was denied because of budget.

19.     Fred Fanning and Jana Brooks hid chemical and environmental exposure
information from the plaintiff because they knew that if he were trained and given
medical surveillance, then they would have to reasonably accommodate the plaintiff
because he could not wear a respirator.  Both Fanning and Brooks had first hand
information and reports regarding the hazards in the building.

20.     In July of 2008, the plaintiff was informed by his personal physician that his
bronchiectasis was progressing and that there was something in his duties that was
aggravating it.  Plaintiff was directed by his physician to limit his physical activity
because it could cause his oxygen level to drop.  The plaintiff's personal physician
whom he had been seeing since 2000 stated that the plaintiff could perform

administrative work but that the plaintiff should avoid environmental and chemical exposure.

21.   In July of 2008, plaintiff approached his first line supervisor Jana Brooks (Asbestos Program Manager/ Chief, Energy, Safety & Environmental) who was fully aware of his bronchiectasis, ileostomy and post traumatic stress disorder and requested an accommodation and reassignment.  Her reply was that there were no positions available for reassignment.  She then told the plaintiff to ask Jennifer Jessup (Property division) or Rhonda Jackson, (Associate Director for Management Support Services) about a job because there were positions coming up in their offices and that he would have to seek out other positions on his own.  Others were reassigned as accommodations and or reassignments with no problem and with the assistance of the plaintiff's supervisors.

22.   The plaintiff also spoke with his third line supervisor and mentor Fred Fanning, Director for Administrative Services, Senior Executive Service, (Certified Industrial Hygienist, Certified Safety Professional) regarding his inability to wear a respirator but was told to look for positions outside the agency and overseas.  He also stated that, "no one at Commerce was going to give him anything".

23.    As required by his supervisor, the plaintiff sought out his own reasonable accommodation/reassignment and applied for, qualified for an announcement in August of 2008 (OS-OAS-2008-0018) and scored in the top three competitively.

24.    In August of 2008, plaintiff informed his first line supervisor that he applied for the Supply Management Representative position and was told, "that position is not for you".

25.    In August of 2008, the agency promoted other similarly situated employees by title change but did not do the same for the plaintiff.  Their reasoning was that the plaintiff was out on sick leave.

26.    The training budget thresholds were set at a $1000.00 limit however, Gina Bass received much more for her training than the plaintiff.

27.    Ronette Simpkens, (Secretary) and Rozalind Hill, (Environmental Specialist) received environmental training however, the plaintiff was not offered the same training.

28.    The hostile working environment continued during 2008.  Rhonda Jackson and Mr. Fanning informed Laura Ryan that the plaintiff would cause her trouble if hired in her division because he had previously successfully filed an EEO complaint.  They did not subject the other employees who reported to them to such treatment.

29.     Working conditions were rendered intolerable which he mitigated by completing

a disability retirement application and submitting it to his second line supervisor

Braulio Ramon and he was constructively discharged

30.     Circa September 2008, plaintiff's doctors recommended that he be reassigned

from his position as a Hazardous Waste Facility Assistant, because his work

environment was causing him to suffer from major depression and his bronchiectasis

was progressing.  Although the plaintiff had submitted a disability retirement

application, was told by his supervisor and the selecting official's secretary that the

position was for Gina Basurto-Bass, he still requested a telephone interview for the

position, because he was going to be in the hospital having surgery.  But he was told

that the selecting official will have to "see" if she had to interview him which caused a

delay.

31.     On the morning of September 22, 2008, the date of the plaintiff's interview, the

selecting official contacted the plaintiff by email and stated that there was a delay

because, "I wanted to confer with HR to make sure this means of conducting an

interview was acceptable and fair to all candidates applying for this position."  The

selecting official brought up a conversation between the plaintiff and her secretary and

informed the plaintiff that she was going to contact his supervisor, Jana Brooks about

the allegations made.  At this time the plaintiff declined the interview because the

position was to be filled by him as a reasonable accommodation, he was in the top three

candidates of the eligibles, he had just gotten out of surgery and the selecting official was hostile towards him.

32.     Although Mr. Lee was the most qualified, Mrs. Jessup, the selecting official, hired a person who ranked lower than the plaintiff on the list of eligibles, who had little experience in DOC's personal property programs as set forth in the job vacancy, and who did not make the original certification.  Mrs. Jessup also had no authority from the Office of Personnel Management to select a non-veteran over veteran's preference eligibles.  The selecting official, Jennifer Jessup put her friend and roommate Gina Basurto-Bass into the position.

33.     On October 9, 2008, the plaintiff timely filed a formal administrative complaint asserting non-selection and other acts. After the plaintiff filed his initial EEO complaint, Ms. Brooks, Mrs. Jessup's and Mr. Fanning's treatment of the plaintiff became more hostile.  Mrs. Jessup and Mr. Fanning accused the plaintiff of stealing a laptop and files and filed a police report (an act that the plaintiff could not have done as he was in the hospital having surgery at the time), Mrs. Brooks continued to contact the plaintiff and threatened to report him AWOL.

34.     After receiving the application for disability retirement, Ms. Jessup, Braulio Ramon and Fred Fanning did nothing to reasonably accommodate the plaintiff.

35.     The supervisor's discriminatory/retaliatory treatment caused the plaintiff to suffer from panic attacks and depression.

36.     By placing the agency on notice of his claims, providing sufficient information in his formal complaint for investigation and reinvestigation of them and being processed through the Merit Systems Protection Board, the plaintiff exhausted his administrative remedies.

37.     Ultimately, the agency dismissed the plaintiff's claims citing lack of evidence and the MSPB for lack of jurisdiction.

38.     Plaintiff is timely filing his Complaint in this Court within 90 days of his receipt of the Final Agency Decision.

39.     The plaintiff's supervisors discriminated and retaliated against him, failed to afford a reasonable accommodation, denied training and other acts that created a hostile work environment.  The supervisors withheld personal protective equipment, chemical and environmental hazard data and medical monitoring.  These and other acts ultimately caused the plaintiff's position to become intolerable and caused the plaintiff to be constructively discharged from his position as Hazardous Waste Facility Assistant in September of 2008.

## Count One

## (Reprisal for Engaging in Protected Activities)

40.     The foregoing paragraphs are realleged and incorporated by reference herein.

41.     The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because he engaged in activities protected by Title VII and the ADA. The stated

reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus.

## Count Two

### (Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq.)

42.     Plaintiff realleges and incorporates by reference each allegation contained in each aforementioned paragraph as thoughtfully set forth herein.

43.     DOC has discriminated against the plaintiff by denying him reasonable accommodation for his disabilities, including Bronchiectasis, Post Traumatic Stress Disorder, stomach pain and occupational stress, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, as amended.

44.     DOC has conducted itself intentionally, deliberately, willfully, and in callous disregard of the rights of the plaintiff.

45.     By reason of DOC's discrimination, The plaintiff is entitled to all legal and equitable remedies available under the Rehabilitation Act.

46.     Attorney's fees should be awarded under 29 U.S.C. § 794(a) (1).

## Count Three

### (Hostile and Abusive Working Environment)

47.     The foregoing paragraphs are realleged and incorporated by reference herein

48.     The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII, Rehab Act, and the ADA. The stated

reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

## Count Four

## (Constructive Discharge)

49.     Plaintiff realleges and incorporates by reference each allegation contained in each aforementioned paragraph as thoughtfully set forth herein.

50.     DOC has discriminated against the plaintiff by denying him reasonable accommodation for his disabilities, including bronchiectasis, post traumatic stress disorder, stomach pain and occupational stress, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which caused him to be constructively discharge.

## Prayer for Relief

WHEREFORE, the Plaintiff requests that the court award him:

(a)     An Order declaring that defendant violated plaintiff's civil rights under Title IIV of the Civil Rights Act of 1964, as amended, 42 U.S.C. 42 U.S.C. §2000e et seq, and restraining and enjoining defendant from further such violations.

(b)     A retroactive back pay, with all attendant back pay, benefits and other emoluments of employment benefits lost as a result of plaintiff being unlawfully denied his rights.

(c)     The sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation.

(d)    Front pay at the GS-10 pay level (including pay increases) until he reaches the

age of 55 years when he would have retired from federal service but for DOC

management's discriminatory and retaliatory treatment of him;

(e)    Costs and reasonable attorneys' fees incurred with this lawsuit with interest

thereon; and

(f)    Other damages and further relief as deemed just and appropriate.

## JURY DEMAND

The plaintiff requests trial by jury.

Date:                                                        Respectfully Submitted,

_2/10/11_                                    _____

                                                             Edgar D. Lee, Pro Se
                                                             716 Elderberry Lane
                                                             Columbia, SC 29229
                                                             (803) 834-3660

15